IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Sheri S. Ables, | ) | |
| | ) | C/A No. 9:10-3203-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"),

codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the

Commissioner of Social Security ("Commissioner").

## I. PROCEDURAL HISTORY

Plaintiff Sheri S. Ables alleges that she has been disabled since October 15, 2006, because

of depression and panic attacks. Plaintiff protectively filed an application for a period of disability

and disability insurance benefits on October 17, 2007. Plaintiff also protectively filed an application

for supplemental security income on February 11, 2008. Her applications were denied initially and

upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The

ALJ held a hearing on October 26, 2009. On January 8, 2010, the ALJ issued a decision that

Plaintiff was not disabled under sections 216(i), 223, and 1614(a)(3)(A) of the Act. On October 21,

2010, the ALJ's decision became the "final decision" of the Commissioner after the Appeals Council

determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter

brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision"

of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for a Report and Recommendation. On October 31, 2011, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Commissioner's decision to deny benefits be affirmed. Plaintiff filed objections to the Report and Recommendation on November 14, 2011, to which the Commissioner filed a reply on November 28, 2011.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a de novo determination of any portions of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The

statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## III. DISCUSSION

A.    Factual Background

Plaintiff was thirty-six years old at the time of her claimed disability. She has past relevant work as a data clerk, as well as a high school education, one year of college, and some trade or vocational school training. Her relevant medical history is as follows.

Plaintiff presented to Dana L. Wiley, M.D. on November 14, 2005 for a psychiatric evaluation. Dr. Wiley noted that Plaintiff had first been treated for her mental health issues after she and her husband separated two years earlier. Plaintiff was taking Wellbutrin for depression. She complained of insomnia, weight gain, and poor concentration. She denied suicidal/homicidal ideations or prior attempts. Plaintiff reported no manic episodes, audio/visual hallucinations, or systematized delusions. Plaintiff was alert, dressed appropriately, coherent, and her speech was goal directed. Her mood was depressed and her affect was anxious and tearful at times. Plaintiff was diagnosed with adjustment disorder with mixed emotional features. Dr. Wiley reduced Plaintiff's

Wellbutrin, and prescribed Klonopin as needed for anxiety, and prescribed Desyrel for depression and insomnia. Tr. 253-54. Plaintiff was referred for therapy.

Plaintiff was examined by Dr. Wiley on February 8, 2006. She reported initial good response to medication but on this date felt depressed and anxious. Her speech was goal directed and she exhibited no acute psychosis or suicidal/homicidal ideations. Her mood was depressed and her affect blunted to anxious. Dr. Wiley increased her Wellbutrin and Zoloft for depression and prescribed Klonopin as needed for anxiety. Tr. 251.

Plaintiff was seen at Oconee Family Practice on May 24, 2006. Plaintiff was off her medications. Her anxiety and depression were moderate. Plaintiff reported that her psychiatrist was not practicing, and therefore she has not been on any of her medications. Her appearance was anxious, and her mood was anxious depressed. Plaintiff was prescribed Ativan, Wellbutrin, and Zoloft. Tr. 328-29.

Plaintiff presented to Oconee Family Practice on July 5, 2006 complaining of fatigue, headache, anxiety, and depression. Plaintiff was prescribed Ativan, and Zoloft. Tr 326-27.

Plaintiff was seen at Oconee Family Practice on July 12, 2006. Plaintiff reported that she was having difficulty concentrating and completing assigned tasks. Plaintiff was assigned Adderall to aid in concentration. Tr. 324.

Plaintiff presented to Oconee Family Practice on July 24, 2006, complaining of being stressed out with work and having trouble coping. Plaintiff stated that she had not been taking her Wellbutrin because she felt that the medication was not controlling her symptoms. She was anxious and crying. She was prescribed Cymbalta for depression. Tr. 320.

Plaintiff presented to Oconee Family Practice on October 9, 2006, complaining of headaches,

ear pain, nasal congestion and discharge, sore throat, and cough. Her anxiety and depression were reported as stable. Tr 313.

Plaintiff saw Dr. Wiley on December 28, 2006. Plaintiff reported that she was diagnosed with and treated for skin cancer. She complained of feeling depressed, anxious, and worried that the cancer could return. Dr. Wiley reported no acute psychosis or suicidal/homicidal ideations. Plaintiff's mood was depressed and her affect was anxious and tearful. Plaintiff was prescribed Desyrel (Trazodone), Wellbutrin, and Zoloft for depression and Klonopin for anxiety. Tr. 251.

Plaintiff presented to Dr. Wiley on January 31, 2007, complaining of poor concentration and distractability. Her speech was goal directed and she exhibited no acute psychosis or suicidal/homicidal ideations. Her mood was less depressed. Tr. 250.

Plaintiff presented to Dr. Wiley on February 28, 2007. Plaintiff reported better focus with Focalin and that she had stopped Wellbutrin. Dr. Wiley noted that Plaintiff was alert, exhibited no acute psychosis or suicidal/homicidal ideations. Plaintiff's mood was more euthymic, sleep and appetite were good. Tr. 249.

Plaintiff was seen at the Oconee Family Practice on April 2, 2007 for a checkup and refills on her medication. She reported that because she was in school and with her schedule, she wanted to have the medications refilled at the Oconee Family Practice. She reported treatment for anxiety and depression. Plaintiff's chronic problems were reevaluated and appeared to be stable. Plaintiff was advised to return if her symptoms persisted or got worse. She was prescribed Focalin, Desyrel, and Klonopin. Tr. 265-66.

A psychiatric review was prepared on May 2, 2007 by Debra C. Price, Ph.D. Dr. Price determined that Plaintiff had depression and anxiety; that the impairments mildly restricted her

activities of daily living, mildly affected her ability to maintain social functioning, and mildly affected her concentration, persistence, or pace. Tr. 274-86.

Plaintiff was seen on July 18, 2007 at Oconee Family Practice complaining of panic attacks. She was prescribed Ativan and Lexapro. Tr. 294-95.

Plaintiff was examined on December 11, 2007, by April S. Ross, PAC, of Upstate Medical Associates. Plaintiff was assessed with insomnia, depression, generalized anxiety disorder, and panic disorder without agoraphobia, among other things. She was prescribed Klonopin, Zoloft, Effexor, and Esgic-Plus for headaches. Tr. 290-91.

Plaintiff was examined by Spurgeon N. Cole, Ph.D. on April 11, 2008. Dr. Cole reported that Plaintiff made a good impression; however, her affect was constricted. She seemed anxious and depressed and was tearful throughout the evaluation. Plaintiff reported that she worked at Clemson University for sixteen years and was terminated for failing to complete a form when she took time off under the Family and Medical Leave Act. Plaintiff contested the termination, did not prevail, and had been very depressed since. Dr. Cole reported that Plaintiff "is somewhat of a dependent individual and I think she is totally preoccupied with defying and feeling that Clemson University let her down." Plaintiff reported that she had taken Ambien, Ativan, and a Prozac/Ativan mixture prescribed by Dr. Wiley, although she had not seen him in the previous year or so. Dr. Cole reported that Plaintiff was oriented, concentrated adequately, and remained adequately focused during the evaluation. She reported going to bed around 10:00 pm and getting up around 9 am. She took care of her personal hygiene, took medications on her own, cooked, cleaned, and did laundry. She went to the grocery store with her mother. She paid bills, occasionally went out to eat, and occasionally went to church. Plaintiff reported that she got along satisfactorily with others and had no problem

relating to authority figures. Plaintiff stated that she had taken medication for depression since 1995, but she went through a divorce about the same time she was terminated, and these events taken together had caused her a lot of anxiety and depression. Plaintiff's daily living activities were adequate. Her social function was mildly to moderately impaired. She continued to interact with others, but on a much reduced level. Dr. Cole diagnosed Plaintiff with dysthymic disorder, generalized anxiety disorder with occasional panic attack, and dependent personality disorder. He stated that Plaintiff was capable of handling funds in her own best interest. Tr. 355-57.

A psychiatric review was undertaken on May 13, 2008 by Xanthia Harkness. She noted depression, dysthymic disorder, generalized anxiety disorder, and dependent personality disorder. She noted mild restrictions of activities of daily living, mild restrictions in maintaining social functioning, and mild restrictions in maintaining concentration, persistence, or pace. She noted no episodes of decompensation of extended duration. Ms. Harkness stated that Plaintiff's allegations were credible, but that overall Plaintiff's mental impairments impose only minimal limitations in function. Tr. 365-77.

Plaintiff was seen by Dr. Wiley on June 27, 2008. Plaintiff's mood was depressed but she reported a good initial response to Wellbutrin. Tr. 488. Plaintiff again was seen by Dr. Wiley on August 22, 2008. She reported still feeling depressed. Plaintiff's mood was depressed, affect less anxious. Tr. 488.

Craig A. Horn, Ph.D. undertook a psychiatric review on July 31, 2008. Dr. Horn noted depression, dysthymic disorder, generalized anxiety disorder, and dependent personality disorder. He found mild restrictions on activities of daily living, moderate restrictions in maintaining social functioning, and moderate restrictions in maintaining concentration, persistence, or pace. He noted

no episodes of decompensation of extended duration. Dr. Horn found Plaintiff to be credible. He noted that, while Plaintiff's mental impairments are severe, they do not preclude her ability to perform simple, unskilled work away from the general public. Tr. 405-17.

A Mental Residual Functional Capacity Assessment was performed by Dr. Horn on July 31, 2008. Dr. Horn determined that Plaintiff is capable of understanding and remembering simple instructions and basic work procedures, but would have difficulty with more complex instructions. He noted that Plaintiff is able to carry out simple tasks for two hours at a time without special supervision, and would not have an unacceptable number of work absences due to psychiatric symptoms. According to Dr. Horn, Plaintiff has the ability to maintain attention and concentration for extended periods, and sufficient concentration and persistence to complete simple tasks. Dr. Horn found that Plaintiff is able to relate appropriately to coworkers and supervisors, but should not work with the general public. He determined that Plaintiff has the ability to ask simple requests or request assistance, as well as the ability to accept instructions and respond appropriately to criticism from supervisors. Dr. Horn opined that Plaintiff can adapt to workplace changes and can recognize and avoid normal hazards. Dr. Horn stated that Plaintiff could carry out basic work functions away from the general public. Tr. 419-21.

Plaintiff presented to Dr. Wiley on October 9, 2008. Her mood was depressed and her affect tearful. She was prescribed Celexor for depression. Tr. 487.

Plaintiff was seen by Dr. Wiley on January 8, 2009. Plaintiff reported depression over financial issues. Her mood was depressed, affect tearful. She was prescribed Wellbutrin for depression. Tr. 486.

Plaintiff was seen by Dr. Wiley on April 3, 2009. Plaintiff presented with bilateral tremor

suggestive of essential tremor but had not seen a neurologist for diagnosis. Plaintiff requested to try Effexor for depression. Plaintiff's mood was depressed, affect tearful. She expressed feelings of hopelessness about future job prospects. Plaintiff was prescribed Celexor and Effexor for depression. Tr. 486.

Plaintiff was seen at Upstate Medical Associates, PA on May 20, 2009. Plaintiff stated that she had been having hot flashes for six months and was feeling very nervous. Plaintiff reported that she had a good life but seemed to cry all the time. She stated that she was not satisfied with Effexor. Plaintiff's mood was anxious and she cried through the entire examination. Plaintiff was prescribed Lexapro. Tr. 445-46.

Plaintiff presented to Upstate Medical Associates, PA on May 26, 2009, complaining of increased depression and fatigue. She stated that she cried a lot and does not enjoy life. Plaintiff was placed on Lexapro several days previously and felt a little better. Plaintiff's mood was anxious. She cried through the entire examination. Plaintiff was informed that her medications take time. Tr. 444.

Plaintiff presented to Upstate Medical Associates, PA on June 2, 2009, for a recheck on her depression. She continued to complain of extreme fatigue and malaise, and stated she had been aching all over for the last six months. Her mood was not anxious. Tr. 440.

Plaintiff presented to Upstate Medical Associates, PA on July 7, 2009. She complained of muscle weakness and aches all over. She also complained of Lexapro not helping with increased anxiety or depression and that if she did not have the Ativan she would have a nervous breakdown. Plaintiff's mood was anxious. Plaintiff was crying stating that she cannot sleep and is so depressed. Plaintiff was prescribed to Cymbalta for depression. Tr. 493.

9

Plaintiff was seen by Dr. Wiley on July 17, 2009. She was prescribed Effexor for depression.

Plaintiff presented to Upstate Medical Associates, PA on August 3, 2009. She complained of increased anxiety and being an emotional wreck. She reported that Cymbalta was not helping. Plaintiff's mood was anxious and she cried through the entire visit. She stated many times that she worries about everything. She was prescribed Symbyax for depression.

On October 1, 2009, Dr. Wiley prepared a letter in which he opined that Plaintiff has a history of depression since 1995, and that her depression increased following termination from her job, and a divorce, among other things. Dr. Wiley stated that the incidents increased Plaintiff's feelings of depression, hopelessness, self-consciousness, and episodes of panic attacks, leading to social isolation. Dr. Wiley reported that Plaintiff has difficulty processing and remembering information, which further increased her depression, anxiety, and feelings of helplessness. Dr. Wiley opined that Plaintiff was unable to work on either a full-time or part-time basis. Tr. 454. Dr. Wiley also completed a Medical Source Statement (Mental) on October 1, 2009. Dr. Wiley opined that Plaintiff could occasionally follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, and function independently. According to Dr. Wiley, Plaintiff could rarely deal with work stresses and maintain attention/concentration. Tr. 456. Dr. Wiley stated that Plaintiff could rarely carry out complex job instructions or detailed, but not complex, job instructions, and occasionally carry out simple job instructions. Dr. Wiley also stated that Plaintiff could frequently maintain her personal appearance, but rarely behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. Tr. 457.

Dr. Wiley also completed a Psychiatric Review Technique on October 1, 2009. Dr. Wiley opined that Plaintiff meets Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related

Disorders).  Dr. Wiley opined that Plaintiff suffers from depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.  He also opined that Plaintiff suffers from anxiety as evidenced by recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week.  Dr. Wiley noted moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and three episodes of decompensation, each of extended duration.  Tr. 458-71.

An independent medical evaluation was performed by Ronald M. Tollison, M.D. of North Hills Medical Center on October 6, 2009.  Plaintiff reported aching all over with hurting in her legs, arms, trunk, and neck.  Plaintiff stated she gets panic attacks and feels very anxious most of the time. Dr. Tollison noted that Plaintiff appeared to be sad and somewhat anxious.  Dr. Tollison assessed chronic pain, tremor, depression/anxiety, history of skin cancer, and previous fracture of the left elbow.  Dr. Tollison concluded that Plaintiff's depression and anxiety exacerbate her physical symptoms to the point that she would not be able to perform at even the sedentary level.  Dr. Tollison stated that Plaintiff's restrictions had persisted since at least November 1, 2006.  Tr. 472-75. Dr. Tollison also completed a Medical Source Statement (Physical) in which he stated that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand, walk and sit; occasionally climb, balance, stoop, and kneel; and rarely crawl.  He noted that Plaintiff could frequently reach, handle, feel, and speak; occasionally push/pull, and constantly hear.  Dr. Tollison noted that Plaintiff's psychological symptoms exacerbate her physical complaints and problems.  Tr. 476-79.

B.      The ALJ Hearing Testimony

Plaintiff testified that she was thirty-nine years old at the time of the hearing.  She stated that she had a high school diploma and two years at a technical college.  She also took some college courses at Clemson University.  Plaintiff testified that she was terminated from Clemson University on August 13, 2005 because she could not keep up with the demands of her job.  She worked at a clerical position for the Department of Motor Vehicles from the end of June 2006 to October 15, 2006, but was terminated because she could not retain the information needed to perform.  Tr. 51-55.

Plaintiff testified that she did not attempt to find a less stressful or simple job because she was just basically in the house depressed and stressed.  According to Plaintiff, her symptoms got really bad in 2005.  She tried to work in 2006 because she thought she was getting better but she could not perform the job.  Plaintiff testified that she sees Dr. Wiley every two to three months for a thirty minute session.  Tr. 55-56.  Plaintiff testified that she washes her clothes, fixes her meals, takes care of her dog, and washes dishes.  She also does some vacuuming, sweeping, and mopping with the help of her mother.  She does the grocery shopping with her mother.  Plaintiff testified that she spends the day watching television and reading magazines.  She occasionally attends church.  According to Plaintiff, her father and brothers take care of the yard.  Tr. 58-59.  Plaintiff testified that she takes care of her own personal hygiene.  Tr. 60.

Plaintiff testified that she would be prevented from going to work because of anxiety and panic attacks that she experiences three to four times a week.  Id.  Plaintiff testified that her medications make her drowsy and she occasionally sleeps during the day.  She stated that she had no problems sitting, standing, walking, lifting ten pounds, bending, and climbing a few stairs.  Tr. 61-63.  She also testified that she has migraine headaches two to three times a week for which she

takes Maxalt. Plaintiff stated that she has crying spells several times a week and gets very distracted. Tr. 63-65.

Terry Washington, testified as a Vocational Expert. Dr. Washington identified Plaintiff's prior work as sedentary or lighter work. Tr. 69. In response to the ALJ's hypothetical, Dr. Washington stated that Plaintiff could perform work as a cleaner/housekeeping, which is light, unskilled work activity; linen grader in a laundry, which is light, unskilled work activity; a marker or marketing clerk, which is light, unskilled work activity. The Vocational Expert also testified that, were the limitations set forth by Dr. Wiley considered, there would be no jobs that Plaintiff could perform. Tr. 71-73.

C.    The ALJ's Decision

The ALJ determined that Plaintiff had the severe impairments of depression and panic attacks (20 C.F.R. § 404.1520(c) and 416.920(c)). Tr. 12. The ALJ noted that Plaintiff's activities of daily living were mildly restricted based on Plaintiff's reporting that she engages in various activities of daily living independently, lives alone, cares for her personal hygiene, operates an automobile, goes grocery shopping with her mother, pays bills, balances a check book, and cares for her dog. Tr. 13. The ALJ noted that Plaintiff has moderate difficulties in social functioning as exhibited by a lack of contact with persons outside her immediate family and physicians. The ALJ further noted that Plaintiff occasionally participates in church functions and is able to leave the home when accompanied by her mother to run errands. *Id.*

The ALJ determined that Plaintiff has moderate difficulties in concentrating, processing and retaining new information. *Id.* The ALJ observed that Plaintiff is able to read, watch television, and work on her computer. The ALJ also determined that Plaintiff has not satisfied the requirements for

13

adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8). The ALJ noted that no state agency reviewer/consultant/examiner had concluded that Plaintiff has an impairment severe enough to meet or equal a listing, and that no treating physician has credibly concluded that Plaintiff has an impairment severe enough to meet or equal a listing. Tr. 14. The ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Plaintiff is to have no more than occasional interaction with the public and no more than frequent interaction with coworkers and supervisors. *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she also determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were not consistent with the residual functional capacity assessment. Tr. 15. The ALJ stated that the evidence did not support severe and debilitating symptoms of depression and anxiety. The ALJ observed that Plaintiff is able to control her mental impairments with Lexapro and Ativan. The ALJ described Plaintiff's treatment with Dr. Wiley to be sporadic and noted that Dr. Wiley prescribed Klonopin to be taken on an as-needed basis, which indicates that the Plaintiff's anxiety attacks are not occurring on a consistent basis. *Id.*

The ALJ discounted Dr. Wiley's medical narrative dated October 1, 2009. The ALJ noted that there was no indication whether there was a counseling session conducted that day. The ALJ observed that Dr. Wiley indicated that Plaintiff is unable to work on either a full or part-time basis without significant interference from her depression, panic attacks, poor concentration, and preoccupation with her physical health. However, according to the ALJ, Dr. Wiley also noted that Plaintiff has the ability to occasionally follow work rules, relate to co-workers, deal with the public,

use judgment, interact with supervisors, and function independently. The ALJ further noted that Dr. Wiley stated that Plaintiff is rarely able to deal with work stresses, maintain attention and concentration, as well as understand, remember, and carry out complex job instructions and detailed job instructions. However, according to the ALJ, much of the nonexertional restrictions indicated in the narrative are not consistent with Dr. Wiley's comments regarding Plaintiff's symptoms and reaction to medication for the four years Dr. Wiley has rendered medical treatment to Plaintiff. The ALJ also noted that Dr. Wiley indicates that Plaintiff has had three episodes of decompensation, each of extended duration; however, the medical evidence does not indicate that Plaintiff has been hospitalized since her alleged onset date. Tr. 16.

The ALJ also discounted Dr. Tollison's independent medical evaluation. The ALJ noted that, according to Dr. Tollison, Plaintiff's depression and anxiety exacerbated her physical symptoms to the point she could not perform; yet Dr. Tollison also noted that Plaintiff could occasional lift or carry up to twenty pounds and frequently lift or carry up to ten pounds in an eight hour work day. The ALJ concluded that the medical evidence did not consist of objective findings regarding Plaintiff's musculoskeletal pain. Tr. 16.

The ALJ accorded significant weight to the opinions of Dr. Cole and Dr. Korn, finding that their opinions were consistent with the objective medical evidence. The ALJ also gave good weight to the assessments of state agency psychologists. The ALJ observed that the opinions of the state agency psychologists indicate that Plaintiff's mental impairments do not preclude her from carrying out basic work functions with limited contact with the public. Tr. 17. The ALJ gave little weight to the opinions of Plaintiff's treating and examining physicians at Upstate Medical Associates and Oconee Family Practice. Because she did not receive mental health counseling or therapy at those

facilities. *Id.* Finally, the ALJ opined that Dr. Wiley and Dr. Tollison appeared to have based their opinions on Plaintiff's allegations, which are not supported by the objective medical evidence and are inconsistent with Plaintiff's level of independence in performing activities of daily living. Thus, the ALJ gave the opinions of Dr. Wiley and Dr. Tollison little weight. Tr. 17-18.

The ALJ determined that Plaintiff was unable to perform any past relevant work. Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. *Id.* The ALJ also found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Therefore, the ALJ concluded that Plaintiff is not disabled under the Act.

D.    The Report and Recommendation

Plaintiff asserted that the ALJ erred by failing to give adequate weight to the opinions of Dr. Wiley and Dr. Tollison; by making an improper residual functional capacity finding and by not concluding that Plaintiff met a Listing of the Listing of Impairments; by failing to properly consider and evaluate Plaintiff's subjective testimony as to the extent of her pain and limitations; and by failing to give proper consideration to the testimony of the Vocational Expert at the hearing.

As to the ALJ's failing to give adequate weight to the opinion of Dr. Wiley, the Magistrate Judge noted that Dr. Wiley's office notes reveal only minimal findings, and those appear to be based on Plaintiff's own statements; while the residual functional capacity found by the ALJ is supported by the findings of the state agency physicians as well as the consultative findings of Dr. Cole and Dr. Korn. The Magistrate Judge opined that the ALJ gave Plaintiff the benefit of the doubt by finding

that she had moderate, rather than mild, limitations in social functioning and in concentration, persistence, or pace. Accordingly, the Magistrate Judge found that substantial evidence supported the ALJ's decision, and that Plaintiff's argument concerning the ALJ's treatment of Dr. Wiley's opinion to be without merit.

Regarding Dr. Tollison, the Magistrate Judge noted that Dr. Tollison's report contained only minimal objective findings made during her physical examination, and that Dr. Tollison's opinion regarding Plaintiff's mental condition was based solely on Plaintiff's own self-serving reports and statements and his observance of her during the one-time consultation, and not any objective testing. Thus, the Magistrate Judge found the ALJ's decision to accord Dr. Tollison's opinion little weight to be supported by substantial evidence.

Regarding Plaintiff's residual functional capacity, the Plaintiff complained that the ALJ improperly discounted her subjective testimony and reached an incorrect determination as a result. The Magistrate Judge noted that the ALJ had found Plaintiff's treatment to be sporadic and her condition controlled by medication. In addition, the ALJ had noted that Dr. Cole found Plaintiff had good cognitive ability and was able to concentrate adequately; Dr. Korn found no objective findings that would indicate the need for permanent work restrictions or limitations; and that the state agency psychologists also found that Plaintiff's impairments did not preclude her from carrying out basic work functions with limited contact with the public. The Magistrate Judge found the ALJ's decision to accord these medical findings significant weight to be supported by substantial evidence.

Regarding the Listings, Plaintiff contended that the ALJ should have found she met either Listings 12.04 or 12.06. The Magistrate Judge considered Listings 12.03, apparently in error, and 12.04. Regarding Listing 12.04, the Magistrate Judge determined that substantial evidence supports

the ALJ's decision that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

As to the Vocational Expert's testimony that, based on Dr. Wiley's opinion, there would be no jobs available in the local and national economy that Plaintiff can perform due to the severity of her mental impairments, the Magistrate Judge noted that the ALJ properly did not give controlling weight to Dr. Wiley's opinion. Accordingly, the ALJ did not err in relying on the testimony of the Vocational Expert as to Plaintiff's ability to perform jobs based on the limitations found by the ALJ. The Magistrate Judge concluded that the hypothetical given by the ALJ to the Vocational Expert was proper.

In conclusion, the Magistrate Judge found substantial evidence to support the conclusion of the Commissioner that Plaintiff was not disabled within the meaning of the Act during the relevant time period. Therefore, the Magistrate Judge recommended that the decision of the Commissioner be affirmed.

E.    Plaintiff's Objections to the Report and Recommendation

Plaintiff first objects to the Magistrate Judge's finding that substantial evidence supports the ALJ's conclusion that Dr. Wiley's opinion was entitled to little weight. According to Plaintiff, her mental impairments of depression and anxiety are not conducive to objective measurement as are physical impairments. Plaintiff argues that the persistence, intensity, and duration of her symptoms are best appreciated from a lengthy longitudinal treatment history with a specialist in psychiatry.

The ALJ did note that Dr. Wiley's notes reflected Plaintiff's subjective complaints. However, the ALJ also noted that Dr. Wiley opined that Plaintiff has the ability to occasionally follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors,

and function independently. The record also supports the ALJ's determination that Plaintiff engages in various activities of daily living independently, lives alone, cares for her personal hygiene, operates an automobile, goes grocery shopping with her mother, pays bills, balances a check book, cares for her dog, occasionally participates in church functions, and is able to leave the home when accompanied by her mother, read, watch television, and work on her computer. Dr. Wiley's opinion that Plaintiff is totally disabled is inconsistent with evidence in the record that Plaintiff's depression and anxiety do not interfere with her ability to perform sedentary work with restrictions. Plaintiff's objection is without merit.

Plaintiff next argues that the ALJ failed to accord proper weight to the expert opinion of the independent medical examiner, Dr. Tollison. According to Plaintiff, Dr. Tollison thoughtfully provided exertional limitations for Plaintiff's primarily psychological medically determinable impairment. Plaintiff contends that Dr. Tollison's assessment of appropriate physical limitations to mediate her pain is entitled to greater weight. However, as the ALJ noted, Dr. Tollison's conclusion that Plaintiff is not able to perform sedentary work is inconsistent with his findings that Plaintiff is able to occasionally lift or carry up to twenty pounds and frequently lift or carry up to ten pounds in an eight hour work day; stand, walk and sit; occasionally climb, balance, stoop, and kneel; and rarely crawl; frequently reach, handle, feel, and speak; occasionally push/pull, and constantly hear. In addition, Dr. Tollison's examination does not indicate that he conducted a psychological evaluation; rather, his findings were based on Plaintiff's subjective complaints of pain. Plaintiff's objections are without merit.

Plaintiff next contends that the ALJ erred by not giving proper consideration Plaintiff's testimony regarding the severity of her symptoms. Plaintiff argues that the ALJ's failure to find Dr.

Wiley credible led to the conclusion that Plaintiff's reports of severe and debilitating symptoms also were not credible. Plaintiff also asserts that the ALJ erred in finding that Plaintiff is able to control her mental impairments using Lexapro and Ativan.

As Plaintiff correctly notes, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Once a threshold determination is made that objective medical evidence shows the existence of a medical impairment that reasonably could be expected to produce the pain alleged, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. The second step is analyzed using statements from treating and nontreating sources and from the claimant. 20 C.F.R. §§ 404.1529(a), 416.929(a). Factors in evaluating the claimant's statements include consistency in the claimant's statements, medical evidence, medical treatment history, and the adjudicator's observations of the claimant. *See* SSR 96–7p.

The ALJ concluded that Plaintiff's mental impairments could reasonably be expected to cause the alleged symptoms, so that the first step of the *Craig* analysis is met. However, in addition to reporting that Plaintiff's impairments were controlled by medications, the ALJ noted that Plaintiff's treatment by Dr. Wiley has been sporadic and inconsistent; she is prescribed Klonopin to use as needed; and she had a good response to Wellbutrin in June 2008. The ALJ also reviewed the inconsistencies between Plaintiff's claims of pain and the functional capacity evaluations conducted by Plaintiff's treating and examining physicians. The court concludes that substantial evidence supports the ALJ's determination that Plaintiff's complaints were not fully credible. Plaintiff's objection is without merit.

Plaintiff argues that the ALJ's finding of residual functional capacity– i.e, that Plaintiff has

the residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional limitations of having no more than occasional interaction with the public and no more than frequent interaction with co-workers and supervisors– is not supported by substantial evidence. According to Plaintiff, the ALJ's determination was not consistent with the findings of Dr. Cole and Dr. Korn, on whom the ALJ relied.

As set forth in detail hereinabove, Dr. Cole reported that Plaintiff was oriented, concentrated adequately, and remained adequately focused during the evaluation. Plaintiff reported to Dr. Cole that she got along satisfactorily with others and had no problem relating to authority figures. Plaintiff's daily living activities were adequate. Dr. Cole found Plaintiff's social function to be mildly to moderately impaired.

Also as set forth in detail hereinabove, Dr. Horn opined that Plaintiff has the ability to maintain attention and concentration for extended periods, and sufficient concentration and persistence to complete simple tasks. He found that Plaintiff is able to relate appropriately to coworkers and supervisors, but should not work with the general public. He found mild restrictions on activities of daily living, and moderate restrictions in maintaining social functioning and concentration, persistence, or pace. These conclusions are not inconsistent with the ALJ's residual functional capacity determination.

In addition, Xanthia Harkness noted mild restrictions of activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace. Dr. Price determined that Plaintiff's depression and anxiety mildly restricted her activities of daily living, ability to maintain social functioning, and her concentration, persistence, or pace. The court concludes that substantial evidence supports the ALJ's findings. Plaintiff's objections are without

merit.

Plaintiff next contends that the ALJ erred in not finding that she met Listings 12.04 and 12.06. Listing 12.04 provides as follows:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive

living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404 Subpart P, App. 1.

The ALJ fully discussed Listing 12.04, paragraph B, and noted Plaintiff's mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation of extended duration. The ALJ determined that the requirements of paragraph B are not met because Plaintiff's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation of an extended duration.

Listing 12.06 provides:

12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

Or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. § 404, Subpart P, App. 1.

Although the ALJ did not specifically address Listing 12.06, the court finds no support in the record for a finding that Plaintiff meets the requirements of this Listing.

The gravamen of Plaintiff's objection is that the ALJ improperly discredited the expert opinion of Dr. Wiley, and thus the ALJ's Listing analysis is not supported by substantial evidence. The court has determined that the ALJ did not err in discounting Dr. Wiley's opinion. Thus, the court finds no error in the ALJ's conclusions regarding the Listings. Plaintiff's objection is without merit.

Finally, Plaintiff asserts that the ALJ erred by not giving proper consideration to the

testimony of the Vocational Expert when a hypothetical question was posed based on Dr. Wiley's opinion of Plaintiff's several limitations. The court has determined that the ALJ did not err in declining to give controlling weight to Dr. Wiley's findings. Plaintiff's objection is without merit.

IV. <u>CONCLUSION</u>

The court adopts the Report and Recommendation and incorporates it herein by reference. For the reasons stated herein and in the Report and Recommendation, the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
Chief United States District Court

March 20, 2012

Columbia, South Carolina